IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| DEANNDRE KEENE, | * | |
| Plaintiff, | * | |
| v. | * | Case. No. MJM-24-3040 |
| COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, | * | |
| Defendant. | * | |

* * * * * * * * *

**MEMORANDUM**

Currently pending before the Court are defendant Comcast Cable Communications Management, LLC's ("Comcast") Motion to Compel Arbitration, ECF No. 9, and several motions filed by self-represented plaintiff Deanndre Keene, ECF Nos. 11, 26, 27, 37, 38, 41, 43, 44, 47. The motions are fully briefed and ripe for disposition. No hearing is necessary. Loc. R. 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall grant Comcast's Motion to Compel Arbitration, and Plaintiff's motions shall be denied.

I.  **BACKGROUND**

Deanndre Keene ("Plaintiff") was an employee of Comcast from 2003 through 2023. ECF No. 4. She was assigned to the "Beltway" Residential Billing Division from the time she was hired until April 17, 2022. ECF No. 10-3. She alleges that she was never written up or disciplined during

1

her first nineteen years of employment. ECF No. 4-1 at 1.[1] Plaintiff is black and alleges that she has certain disabilities relating to her mental health. *Id.* at 1–2.

In 2012, Comcast developed an alternative dispute resolution program for its employees, entitled "Comcast Solutions." ECF No. 9-2 at 1. Comcast Solutions requires binding arbitration for "any claims raised between a Participating Employee and the Company . . . that involve an alleged violation of law, where such alleged violation relates to or arises from the employment relationship." ECF No. 9-3 at 3. This program applies to most employment-related claims, including alleged "unlawful discrimination on the basis of race, gender, age, disability . . .," alleged "unlawful failure to accommodate based on disability," and alleged violations of leave laws, including violations of the Family and Medical Leave Act ("FMLA"). *Id.* at 3–4. Both Comcast and employees participating in the program waive their rights to bring, pursue, or litigate claims in courts of law or equity. ECF No. 9-3 at 3, 10–11; ECF No. 9-4 at 10. Instead, both participating employees and the company commit to bring covered claims through the process outlined by the program, culminating in binding arbitration. ECF No. 9-3 at 6–10; ECF No. 9-4 at 4. Notably, participation in the program does not interfere with an employee's right to seek redress through appropriate government agencies or law enforcement authorities, but it does waive the employee's right to seek redress in the courts for covered employment-related claims. ECF No. 9-3 at 5, 10–11; ECF No. 9-4 at 10.

Comcast Solutions was introduced to Maryland-based employees in September 2013. ECF No. 9-2 at 2. This introduction included a letter and brochure that was mailed to the homes of Maryland-based employees on September 23, 2013. *Id.*; ECF Nos. 9-4 & 9-5. The letter and accompanying brochure outlined the program and stated that employees would be automatically

---

[1] The page numbers in citations to the record refer to the page numbers assigned by the ECF system, rather than by any page numbers printed on the underlying document.

enrolled to participate in the program if they did not submit an "opt out" form by November 1, 2013. ECF No. 9-4 at 9. If an employee completed and submitted an "opt out" form, the Comcast Solutions team acknowledged such submission by sending the employee a written confirmation of receipt. *Id.* at 3. A reminder email regarding Comcast Solutions and the "opt out" deadline was sent to all Maryland-based employees on October 3, 2013. ECF No. 9-7.

Comcast's records reflect that Comcast mailed the September 23, 2013, letter to Plaintiff at her home in Baltimore, Maryland, to the address she had on file with Comcast during her employment. ECF No. 9-2 at 2. Comcast's records also indicate that the October 3, 2013, "opt out" reminder email was sent to the email address that Comcast had assigned Plaintiff during her employment. *Id.* at 3. There is no record of Comcast ever having received an "opt out" form from Plaintiff. *Id.* at 3.

After the initial 2013 rollout of Comcast Solutions, Comcast began requiring participating employees to expressly certify that they were bound by the program as part of the annual employee acknowledgement of the company's Code of Conduct and Employee Handbook. *See* ECF No. 9-2 at 3; ECF Nos. 9-8, 9-9, 9-10. In each acknowledgement, the employee affirms her understanding of the Comcast Solutions program. *Id.* The employee further acknowledges that the program "is a mutually-binding contract between [her] and Comcast and that [her] continued employment with Comcast is confirmation that [she is] bound by the terms of [the program,]" unless she opted out of the program during its roll-out or she is covered by a separate agreement that does not require participation in the program. *Id.* Comcast's records reflect that Plaintiff completed these electronic

3

acknowledgements several times between February 2018 and March 2020.  ECF No. 9-2 at 3–4; ECF No. 9-11.

On April 17, 2022, Plaintiff transferred to the Business Billing Division, which was based (virtually) out of Denver, Colorado. ECF No. 10-3. She alleges that after transferring to this division, her mental health declined quickly, due in part to the lack of training and communication about her responsibilities from her new team. ECF No. 4-1 at 1. From the time of her transfer until on or around September 9, 2022, Plaintiff experienced declining mental health and began expressing complaints about the onboarding process and her new managers. *Id.* at 2–4. She took short-term disability leave from September 11, 2022, through April 5, 2023, due to these mental health issues. *Id.*; ECF No. 11 at 2. Plaintiff's employment was terminated on or about April 5, 2023. *Id.*; ECF No. 4-1 at 1.

On July 23, 2024, Plaintiff filed a civil complaint in the Circuit Court for Baltimore City asserting claims against Comcast stemming from her employment and termination, including claims of discrimination based on race and disability under Maryland law, the Americans with Disabilities Act, and Title VII of the Civil Rights Act of 1964. *See* ECF Nos. 4, 4-1.

On October 18, 2024, Comcast removed the matter to this Court. ECF No. 1. On October 25, 2024, Comcast filed a Motion to Compel Arbitration. ECF No. 9. Plaintiff filed a response in opposition. ECF No. 10. Plaintiff then filed a "Motion to Reopen, Vacate Arbitration, and Remand to Circuit Court." ECF No. 11. She later amended that motion, seeking to "dismiss" the arbitration agreement but proceed with her claims in this Court. ECF No. 26. Plaintiff then filed a motion for "immediate default judgment" against Comcast. ECF No. 27.[2] The same day Plaintiff filed the

---

[2] Plaintiff's motion for default judgment is summarily denied. The only asserted grounds for default judgment against Comcast is its failure to file a timely response to opposition briefs filed by Plaintiff. ECF No. 27. But Comcast did file timely responses. ECF Nos. 28, 29. Even if Comcast failed to file timely

4

default judgment motion, Comcast filed a reply to her opposition to the Motion to Compel Arbitration, and a response in opposition to her Motion to Vacate Arbitration. ECF Nos. 28, 29. Plaintiff then filed a reply to Comcast, and filed motions for sanctions, ECF No. 37; to seal "personal information" contained in court filings, ECF No. 38; to "deem admitted or compel [Comcast] to respond" to her motions regarding the arbitration agreement and default judgment, ECF No. 41; for various forms of "Emergency Relief," ECF Nos. 43, 44; and to "Highlight Inconsistencies and Misrepresentation," ECF No. 47. Comcast responded in opposition to Plaintiff's motions for sanctions and emergency relief. ECF Nos. 39, 45.

## II. MOTION TO COMPEL ARBITRATION

### A. Standard of Review

The Federal Arbitration Act ("FAA") provides that, in any contract involving interstate commerce, a provision in which the parties agree to arbitrate their disputes shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided . . . ." 9 U.S.C. § 2. The FAA "reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.,* 473 U.S. 614, 631 (1985)); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."). "When the parties have agreed to an arbitration clause . . . courts apply 'a presumption of arbitrability,' such that 'an order to arbitrate the particular grievance should not be denied unless it may be said

---

responses, that would not be grounds for default judgment under Rule 55(b) of the Federal Rules of Civil Procedure.

with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Waterford Inv. Servs., Inc. v. Bosco*, 682 F.3d 348, 353 (4th Cir. 2012) (quoting *Washington Square Sec., Inc. v. Aune*, 385 F.3d 432 (4th Cir. 2004)), and *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)); *see also Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 572 (4th Cir. 1998) (holding that policy favoring arbitrability articulated in *AT & T Technologies* "is not limited to labor contracts"). The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone*, 460 U.S. at 24–25. The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

"Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Adkins v. Labor Ready, Inc.,* 303 F.3d 496, 501 (4th Cir. 2002). As such, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening the [FAA]." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). However, state law defenses must not be applied "in a fashion that disfavors arbitration," and they must not "rely on the uniqueness of an agreement to arbitrate" as grounds for invalidating it. *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 341 (2011) (quoting *Perry v. Thomas*, 482 U.S. 483, 493 (1987)).

**B. Analysis**

In its motion to compel arbitration, Comcast seeks an order compelling Plaintiff to arbitrate her claims against it and dismissing this action. ECF No. 9-1 at 1. The Court must determine whether there is an arbitration agreement between Plaintiff and Comcast that is enforceable under the FAA and whether Plaintiff's claims are within the scope of that agreement. For the reasons

explained herein, the Court finds that there is a valid and enforceable arbitration agreement between the parties and that Plaintiff's claims fall within its scope. Accordingly, Comcast's motion to compel arbitration will be granted. Plaintiff's motion to vacate the arbitration agreement shall be denied.

1. **Validity of the Arbitration Agreement**

The Court first finds the arbitration agreement between the parties to be valid and enforceable. "Under Maryland law, to be binding and enforceable, an arbitration agreement must be a valid contract[]" and "must be supported by consideration." *Hill v. Peoplesoft USA, Inc.,* 412 F.3d 540, 543 (4th Cir. 2005) (citing *Cheek v. United Healthcare of Mid-Atl., Inc.,* 835 A.2d 656, 661 (Md. 2003)). A valid contract requires mutual assent. *Id.* Here, there was mutual assent between Comcast and Plaintiff. In 2013, Comcast mailed a letter and brochure to Plaintiff's home address explaining the Comcast Solutions program and how employment-related claims asserted by the company or by participating employees would be subject to mandatory arbitration. ECF Nos. 9-2, 9-4, 9-5, 9-6. The materials mailed to Plaintiff and a subsequent email sent to her email address explained that an employee must opt out of the program to avoid automatic enrollment. *Id.*; ECF No. 9-7. Plaintiff did not opt out. ECF No. 9-2 at 3. Plaintiff later completed several electronic acknowledgements of the Comcast Code of Conduct and Employee Handbook between 2018 and 2020 and, in each acknowledgment, certified that she was bound by Comcast Solutions policy. ECF No. 9-2 at 3; ECF Nos. 9-8, 9-9, 9-10, 9-11. The consideration requirement for a valid contract was met by the parties' mutual obligation to arbitrate. *See Bopda v. Comcast of the Dist., LLC*, Civ. No. PJM 22-2889, 2023 WL 6292767 (D. Md. Sept. 27, 2023), *aff'd*, No. 23-2148, 2024 WL 399081, at *2 (4th Cir. Feb. 2, 2024) ("A mutual promise to arbitrate constitutes sufficient consideration for an arbitration agreement.").

Although Plaintiff does not dispute that she agreed to participate in Comcast Solutions at some points in time, she argues that the arbitration agreement is inapplicable as to her present claims because the dispute in question arose after her last acknowledgement of the agreement in 2020. ECF No. 17 at 1; ECF No. 26 at 1; ECF No. 28 at 2. Plaintiff also argues that the original arbitration agreement is inapplicable because she transferred divisions and was then virtually based out of Denver, Colorado instead of Maryland. ECF No. 10-3.

Plaintiff fails, however, to offer any evidence or indication that her arbitration agreement expired at any point during or after her employment with Comcast or was not intended by the parties to survive her transfer between divisions or even her termination. To the contrary, the Comcast Solutions policy states that an employee's participation in the program survives termination. ECF No. 9-3 at 2. Several times, Plaintiff acknowledged that she was bound by the terms of this policy and her continued employment confirmed her agreement to be bound by these terms. ECF Nos. 9-8, 9-9, 9-10 9-11.

The U.S. Court of Appeals for the Fourth Circuit has recognized that "continuance of employment can be evidence of an implied agreement to the terms of that employment." *Bodie v. City of Columbia, S.C.*, 934 F.2d 561, 564 (4th Cir. 1991). In *Kropfelder v. Snap-On Tools Corp.*, Judge Kaufman found that "the failure to sign a new agreement, without any explanation by either party," was insufficient "to rebut the presumption favoring extension of the terms of definite contracts with specific arbitration clauses—especially in the light of the strong federal policy favoring arbitration." 859 F. Supp 952, 955 (D. Md. 1994). Accordingly, in the absence of contractual language or any other evidence to suggest that the arbitration agreement embodied in the Comcast Solutions policy expired at any point after Plaintiff's last acknowledgment of the agreement in 2020, the Court finds it to remain valid and enforceable.

Furthermore, the letter sent to Plaintiff with the enclosed brochure, Comcast Code of Conduct, and Employee Handbook neither state nor imply that the agreement would expire. Nor does it say that the contract would become invalid if she moved positions or locations within the company. ECF Nos. 9-3, 9-4, 9-5. The Comcast Solutions Program Guide explicitly states:

> Individuals who become "Participating Employees" in the Program will continue to participate in Comcast Solutions throughout their employment with the Company and following their termination from employment for any reason, whether by resignation or by discharge.

ECF No. 9-3 at 3.

The Court finds that Plaintiff demonstrated her assent to the mandatory arbitration provisions of the Comcast Solutions policy and that these terms did not expire at any point.

Plaintiff argues that her mental incapacity made her incapable of consenting to any sort of agreement during her last eight months of employment in 2022 and 2023, which she argues would make the arbitration clause inapplicable during this time. ECF No. 19 at 2. The Court is not persuaded. Maryland law presumes mental capacity to contract with the burden to show incapacity placed on the party arguing such incapacity. *See, e.g., Smith v. Montgomery Cnty.*, Civ. No. PWG-8:17-03122, 2019 WL 1130156, at *4 (D. Md. Mar. 12, 2019). For a party to be deemed incapable to contract, she must prove that she was "unable to understand in a reasonable manner the nature and consequences of the transaction" or "unable to act in a reasonable manner in relation to the transaction, and the other party has reason to know of this condition." *Id.* (citing Restatement (Second) of Contracts § 15(1) (Am. Law. Inst. 1981)).

Plaintiff reports having severe anxiety, frequent panic attacks, depression, and post-traumatic stress disorder ("PTSD"), which has been verified by documentation reflecting medical treatment for such issues. ECF 1-1 at 11–15; ECF Nos. 12, 13, 14, 15. However, Plaintiff does not

9

allege or present any evidence to suggest that her mental incapacity occurred any time before beginning her new role in April 2022. Specifically, Plaintiff does not contend she was compromised in her ability to understand the Comcast Solutions program when it was first presented to her, her decision not to opt-out of the program in 2013, or her agreement to be bound by the program by submitting electronic acknowledgements in 2018, 2019, and 2020. During this time frame, Plaintiff alleges that she was a "great worker" and did not have any issues with workplace performance, ECF No. 4-1 at 1, which suggests that she was indeed capable of understanding the arbitration agreement with Comcast. Even if Plaintiff suffered from anxiety, depression, and PTSD before 2022, she has presented no evidence to suggest that such mental health challenges rendered her incapable of understanding her agreement to arbitrate employment-related disputes with Comcast. Moreover, there is no evidence that Comcast had reason to know that Plaintiff was unable to comprehend the terms of the arbitration agreement. Thus, the presumption that Plaintiff was mentally capable of entering her arbitration agreement with Comcast at the time she entered it and through subsequent acknowledgements remains unrebutted.

Plaintiff argues that Comcast's superior financial resources, legal team, and her limited means render arbitration "unjust." ECF No. 10. The Court construes Plaintiff's argument as asserting that any arbitration agreement she had with Comcast is void as unconscionable. An arbitration agreement must be both procedurally and substantively unconscionable for a court to decline enforcement. *Rankin v. Brinton Woods of Frankford, LLC*, 211 A.3d 645, 655 (Md. Ct. Spec. App. 2019) (citing *Doyle v. Fin. Am., LLC*, 918 A.2d 1266 (Md. Ct. Spec. App. 2007)).

> Procedural unconscionability "concerns the process of making a contract and includes such devices as the use of fine print and convoluted or unclear language, as well as deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms."
>
> * * *

10

> Substantive unconscionability, on the other hand, "refers to contractual terms that are unreasonably or grossly favorable to the more powerful party and includes terms that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law[.]"

*Id.* at 655–56 (quoting *Stewart v. Stewart*, 76 A.3d 1221 (Md. Ct. Spec. App. 2013)).

The arbitration agreement at issue here is neither procedurally nor substantively unconscionable. No evidence has been presented to suggest that the terms of the Comcast Solutions program were hidden or unclear, or that Plaintiff was deceived about them. The terms of the program were clearly conveyed to her in 2013, and she was given an opportunity to opt out of it. *See Johnson v. Opportunity Fin., LLC*, No. 3:22CV190, 2023 WL 2636712, at *10 (E.D. Va. Mar. 24, 2023) (contract of adhesion found not to be procedurally unconscionable when plaintiff had an opportunity to opt-out of arbitration provision). The material mailed to Plaintiff in 2013 displayed the arbitration provisions of the Comcast Solutions program prominently. *See* ECF Nos. 9-4, 9-6. Specifically, the brochure mailed to Plaintiff displays in prominent type an "[i]important note" that, by agreeing to participate in the program, an employee would be waiving their right to bring a civil lawsuit for any covered claims. ECF No. 9-4 at 10. The materials included an opt-out form and a one-page letter that listed in bold type the Comcast employee's option not to participate in the program. *See* ECF No. 9-5. Furthermore, Plaintiff acknowledged that she continued to be bound by terms of the Comcast Solutions policy several times between 2018 and 2020. *See* ECF Nos. 9-8, 9-9, 9-10 9-11. The terms are simple, common, and do not appear to impose unfair burdens. Notably, the parties' agreement is binding on both of them, *id.*, and the Court has been presented no evidence that its terms are unreasonably or grossly favorable to Comcast. Plaintiff

fails to demonstrate any extreme unfairness or lack of choice that would justify invalidating the arbitration agreement as unconscionable.

In sum, Comcast's arbitration agreement is a valid and enforceable contract, wherein Plaintiff assented to arbitrating disputes arising out of her employment relationship with Comcast.

### 2. Compelling Arbitration

To prevail on a motion to compel arbitration under the FAA, the moving party must show "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [other party] to arbitrate the dispute." *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991); *see also Wood v. Uber Technologies, Inc.*, Civ. No. TDC-23-2149, 2024 WL 69926, at *3 (D. Md. Jan. 5, 2024). All four *Whiteside* factors are satisfied in this case.

First, there is a clear dispute between the parties as described in Plaintiff's complaint, ECF No. 4-1; Comcast's pending Motion to Compel Arbitration, ECF No. 9-1; Plaintiff's motions to vacate the arbitration agreement, ECF Nos. 11, 26; and both parties' various correspondence regarding the foregoing motions, ECF Nos. 17, 28, 31.

Second, Comcast Solutions constitutes a written agreement between Comcast and Plaintiff that includes a binding arbitration provision inclusive of the employment discrimination claims asserted here. ECF No. 9-4; *see* Part II.B.1 *supra*.

Third, the employment transaction in this case implicates interstate commerce. Plaintiff was, at the time of her employment with Comcast, and remains today, a resident of Maryland. Comcast is a limited liability company organized under the laws of Delaware with its principal

place of business in Pennsylvania. ECF No. 1-1 at 5. The employment relationship and contract between the parties are within interstate commerce.

Finally, Plaintiff has declined or refused to arbitrate her claims by filing suit in circuit court, ECF Nos. 1 & 44; opposing Comcast's motion to compel arbitration in this Court, ECF No. 10; and filing various motions to avoid arbitration, ECF Nos. 11, 26.

For these reasons, the Court finds that Comcast has satisfied its burden to justify compelling arbitration. The Court will grant Comcast's motion and deny Plaintiff's motions to vacate the arbitration agreement.

### 3. Dismissal

"Where a court finds a valid written arbitration agreement and a dispute within the scope of the agreement, it must compel arbitration and stay the litigation." *Stoner v. MacroGenics, Inc.*, Civ. No. SAG-23-02529, 2024 WL 327085, at *1 (D. Md. Jan. 29, 2024) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649–50 (1986), and *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997)). Dismissal may be an appropriate remedy where all issues are arbitrable, and the non-moving party does not object to a dismissal or argue to stay proceedings. *Campbell v. Comcast Cable Commc'ns Mgmt. LLC*, Civ. No. CCB-21-2000, 2022 WL 4237109, at *5 (D. Md. Sept. 13, 2022), *recons. denied*, 2022 WL 17094562 (D. Md. Nov. 18, 2022). Here, it is clear that all claims asserted in this action are subject to binding arbitration, and Plaintiff does not argue that the case should be stayed pending arbitration. Therefore, the matter shall be dismissed without prejudice.

## III. MOTIONS FOR SANCTIONS

Plaintiff has filed at least two motions requesting sanctions against Comcast for alleged "false and misleading information" and misrepresentations. ECF Nos. 37, 47. In her motions,

Plaintiff alleges that minor factual disputes between the parties are grounds for sanctions. ECF Nos. 37, 47. In response, Comcast argues that Plaintiff should be sanctioned for filing a frivolous and bad faith motion for sanctions. ECF No. 39.

Rule 11 of the Federal Rules of Civil Procedure requires that parties certify that their filings are well-grounded in law and fact, following a reasonable inquiry, and provides sanctions for a party's or counsel's failure to comply with these requirements. Fed. R. Civ. P. 11(b); *In re Bees*, 562 F.3d 284 (4th Cir. 2009) (holding the relevant test is whether the conduct, assessed objectively, was reasonable at the time of filing). Courts issue sanctions when filings lack proper diligence or are frivolous. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (noting that Rule 11 sanctions are intended to deter baseless filings and maintain the integrity of judicial proceedings); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (recognizing the court's inherent power to impose sanctions for conduct that abuses the judicial process).

Both parties' requests for sanctions shall be denied. As a pro-se litigant, Plaintiff is entitled to some leniency in the assessment of frivolousness and bad faith. *See e.g.*, *Haines v. Kerner*, 404 U.S. 519 (1972); *Beaudett v. City of Hampton*, 775 F.2d 1274 (4th Cir. 1985). Sanctions against Comcast and its counsel are also inappropriate because Plaintiff fails to demonstrate that any of Comcast's filings in this matter were presented for an improper purpose, that any of its arguments were frivolous, or that any of its contentions lack evidentiary support. *See* Fed. R. Civ. P. 11(b).

Accordingly, the Court shall deny Plaintiff's motions for sanctions.

## IV.     MOTION TO PROTECT PERSONAL INFORMATION

Plaintiff moves to seal and redact certain "personal information" contained in filings she made with the Court. ECF No. 38. She contends that even her name and contact information

constitute "personal information" subject to sealing and/or redaction. *Id.* As explained below, the Court disagrees and will deny Plaintiff's motion.

Courts are public institutions, and court filings are presumptively subject to the public's right of access. The public right of access to court documents is derived from two sources: the First Amendment to the United States Constitution and the common law. The right of access provided by the First Amendment applies to, *inter alia*, documents "made part of a dispositive motion[.]" *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 576 (4th Cir. 2004). Public access to such documents "may be denied only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988) (citing *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). Additionally, the common law provides a "presumption in favor of access" to "all judicial records and documents[.]" *Id.* (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978)) (cleaned up). "This presumption of access, however, can be rebutted if countervailing interests heavily outweigh the public interests in access." *Rushford*, 846 F.2d at 253. As part of this analysis, the court must "consider alternatives to sealing the documents" at issue. *In re Knight Publ'g Co.* 743 F.2d 231, 235 (4th Cir. 1984).

"[A]t the core of the interests protected by the right of access" is "the citizen's desire to keep a watchful eye on the workings of public agencies and the operation of the government." *Doe v. Pub. Citizen*, 749 F.3d 246, 271 (4th Cir. 2014) (quoting *Nixon,* 435 U.S. at 598) (cleaned up). Among the public's interests in access to court records is the public's ability "to monitor the functions of the courts" and "to understand the judicial process itself and the bases or explanations for a court's decision." *Hisp. Nat'l L. Enf't Ass'n NCR v. Prince George's Cnty.*, Civ. No. TDC-18-3821, 2021 WL 488641, at *4 (D. Md. Feb. 10, 2021) (quoting *Doe*, 749 F.3d at 271, and *Ctr.*

15

*for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1102 (9th Cir. 2016), respectively) (cleaned up).

The Court recognizes that some of Plaintiff's filings contain sensitive personal information that is subject to sealing. By Order dated October 29, 2024, the Court *sua sponte* sealed sensitive materials filed by Plaintiff, which had been docketed at ECF Nos. 12, 13, 14, and 15. ECF No. 18. In her subsequent motion to seal, Plaintiff fails to identify any particular unsealed document for which sealing is necessary and appropriate to protect interests that are substantial enough to outweigh the public's interest in access. *See* ECF No. 38.

The Court does not find that Plaintiff's interests in the privacy of her name and contact information outweighs the public's right to access to court filings. "[T]he general presumption of openness of judicial proceedings applies to party anonymity as a limited form of closure[.]" *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). Still, "privacy or confidentiality concerns are sometimes sufficiently critical that parties or witnesses should be allowed [the] rare dispensation" of proceeding anonymously. *Id.* "[T]here is no legal right in parties either to be allowed anonymity or to avoid it[.]" *Id.* at 242. Thus, "under appropriate circumstances anonymity may, as a matter of discretion, be permitted." *Id.* at 238. The Fourth Circuit has identified several factors for trial courts to consider, including:

> whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; the ages of the persons whose privacy interests are sought to be protected; whether the action is against a governmental or private party; and, relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Id.* at 238 (citing cases).

The Court does not find that the instant case involves sufficiently critical privacy and confidentiality concerns to justify permitting Plaintiff the "rare dispensation" of sealing her name. In her motion, Plaintiff states simply that she has "a legitimate concern that the public disclosure of [her] personal information could potentially put [her] at risk." ECF No. 38. No explanation is offered to support this concern or to describe what risk she faces from the disclosure of her name in connection with this case. Plaintiff elected to file this civil action in her own name and without legal representation, and she now offers no reason to justify sealing her name and contact information and proceeding as a "Jane Doe" plaintiff. Moreover, the filings made in this case in connection with, and in response to, the parties' motions concerning the arbitration agreement are subject to a First Amendment right of public access and no compelling governmental interest has been presented to justify sealing such materials.

Plaintiff has requested redaction of certain information, *see* ECF No. 38, which may serve as a reasonable alternative to wholesale sealing insofar as it does not interfere with public access to court documents. But she fails to provide redacted versions of any court filings to replace those she would seek to have sealed. It is not the Court's responsibility to comb through the various filings in this case searching for material it thinks Plaintiff believes should be hidden from public view. Moreover, the Court notes that in her belated request for sealing and redaction of court records, Plaintiff failed to follow the procedure required by Local Rule 105.11 (D. Md. 2023).

For the foregoing reasons, Plaintiff's motion shall be denied without prejudice.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration will be GRANTED, and Plaintiff's motions will be DENIED. This action shall be DISMISSED without prejudice. A separate Order will follow.

| | |
|---|---|
|   2/5/25   |         /S/         |
| Date | Matthew J. Maddox |
| | United States District Judge |